UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER BOOKER, | |
| Petitioner, | |
| v. | Case No. 21-cv-00215-JPG |
| ERIC WILLIAMS, | |
| Respondent. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Petitioner Christopher Booker ("Petitioner" or "Booker") petition for habeas corpus relief pursuant to 28 U.S.C. § 2241. Respondent Eric Williams ("Respondent" or "Williams") responded. (Doc. 11) and later filed leave to file an amended response in light of updated legislative changes, which the Court granted. Respondent later filed an amended response to Petitioner's habeas petition. (Doc. 14). Petitioner did not file a reply to Respondent's response.

I.   **Background**

Petitioner, a 48-year-old inmate, has been serving a 324-month term of imprisonment for armed bank robbery under 18 U.S.C. § 2113(a) since 2015. He has a release date of December 5, 2038. https://www.bop.gov/inmateloc/ (last visited September 7, 2022). He is currently incarcerated at Federal Correction Institute ("FCI") in Greenville in Illinois, within this district. Petitioner has been working through FCI-Greenville's UNICOR program. He has more than 6,000 days remaining on his sentence. *Id*.

Petitioner brings this action because he seeks good time credits under the First Step Act ("FSA") based on his participation in UNICOR since the enactment of FSA on December 21, 2018. Additionally, he challenges the federal Bureau of Prisons ("BOP") proposed calculation of

time credits, where he argues that BOP uses hours rather than days to calculate time credits. Additionally, he takes issue with the use of his criminal history score from his presentence report ("PSR") as a factor when classifying risk of recidivism. He also takes issue with the BOP tool (PATTERN) used to assess recidivism and says he was denied a copy of his score and information related to the tool. [1]

Petitioner filed his petition in June 2021, before publication of the final rules and regulations in January 2022. Therefore, as explained below, some of petitioner's arguments are moot.

**II.     Analysis**

**a.   Background on FSA**

On December 21, 2018, the FSA was enacted into law. The FSA set up a program where inmates convicted of non-violent offenses could earn up to 15 days credit for every 30 days participation in prison jobs. However, the FSA did not specify how much programming a person in custody must complete or when the program would start. In January 2022 the Bureau of Prisons finalized a new rule codifying the bureau's procedures for the earning and application of credits under this system. FSA Time Credits, 87 FR 2705-01, codified at 28 C.F.R. § 523.40 et. seq.

The application of FSA credits is not available for everyone – the BOP only assigns people with minimal or law PATTERN scores to these programs and activities. The DOJ issued the risk and needs assessment tool, PATTERN, on July 19, 2019. *See* "The First Step Act of

---

[1] Respondent indicates that it has provided Petitioner a copy of the Prisoner Assessment Took Targeting Estimated Risks and Needs ("PATTERN"), which the BOP uses to score risk of recidivism. Because Petitioner did not respond to Respondent's assertions, the Court believes that Petitioner has received a copy of his PATTERN, as well as general information regarding male PATTERN scoring. Therefore, the Court finds as moot any assertions related to the fact Petitioner not receiving his score.

2018: Risk and Needs Assessment, U.S. Department of Justice: Office of the Attorney General," https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessmentsystem.pdf (July 2019). PATTERN assigns point values based on various factors such as including the inmate's age, sex offense history, instant violent offense, criminal history score, history of escapes, history of violence, education score, drug treatment while incarcerated, infraction convictions (any) current incarceration, infraction convictions (serious and violent) current incarceration, infraction-free (any) current incarceration, infraction-free (serious and violent) current incarceration, financial responsibility, programs completed, and work programming. PATTERN then returns a "score" of minimum, low, medium, or high-risk for recidivism. The First Step Act of 2018: Risk and Needs Assessment System - UPDATE," https://www.bop.gov/inmates/fsa/docs/the-first-stepact-of-2018-risk-and-needs-assessment-system-updated.pdf at pp. 10-11; see also Male Pattern Risk Scoring, https://www.bop.gov/ inmates/ fsa/docs/male_pattern_form.pdf.

PATTERN scores are not permanent and are periodically assessed to determine whether recidivism risk has changed. 18 U.S.C. § 3632(a)(4). The FSA provides that "[a] prisoner who successfully participates in evidence-based recidivism reduction programming or productive activities shall receive periodic risk reassessments not less often than annually, and a prisoner determined to be at a medium or high risk of recidivating and who has less than 5 years until his or her projected release date shall receive more frequent risk reassessments." *Id*. at § 3632(d)(5).

Additionally, the final rules, implemented in January 2022, removed the eight-hour definition proposed by the BOP and allowed inmates to earn time credits solely for successful participation in programming need area for any part of the day, with calculation of those credits starting from the FSA's enactment on December 21, 2018. *See* 28 C.F.R. Part 523. This

approach allows inmates in BOP custody to earn time credits while participating in a program, and not just when they complete the program.

After an inmate receives a PATTERN score and a risk category, BOP staff assesses need areas. Such need areas include anger/hostility, antisocial peers, cognitions, education, dyslexia, family/parenting, finance/poverty, medical, mental health, recreation/leisure/fitness, substance abuse, trauma, and work. *See* "Needs Assessment in the Federal Bureau of Prisons," https://www.bop.gov/inmates/fsa/docs/fsa_needs_assessment.pdf (August 2020 Update). BOP additionally identifies appropriate programming aimed at reducing the recidivism risk. The FSA required that within 180 days after completion of PATTERN, BOP was required to complete an initial assessment for each inmate and expand programming. Within two years after that, BOP was required to "phase in" and develop and validate PATTERN for each inmate. 18 U.S.C. § 3621(h)(1) & (2). The FSA does not prescribe what factors DOJ must use to determine recidivism risk – it only calls for a categorization as minimum, low, medium, or high risk. Thus, DOJ released the PATTERN tool in July 2019 to determine such risk.

The FSA prohibits inmates from earning FSA credits completed prior to December 21, 2018, or prior to commencement of sentence under section 3585(a). See 18 U.S.C. § 3632(d)(4)(B); see also 28 C.F.R. §§ 523.42(a), (b). FSA precludes inmates from earning FSA time credits if serving sentences for several enumerated crimes. See 18 U.S.C. § 3632(d)(4)(D); see also 28 C.F.R. § 523.41(d)(2). There are also guidelines for their loss of time credits and restoration. To be eligible for application of FSA time credits an inmate must (1) have demonstrated a recidivism risk reduction or maintained a minimum or low recidivism risk; and (2) have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1); see also 28 C.F.R. § 523.44.

Petitioner is eligible to earn FSA time credits. (Doc. 14, Ex. 1 at ¶ 3). Additionally, Petitioner's most PATTERN score recalculation on February 8, 2022, was a "high" recidivism risk. *Id*. His previous scores from November 2019 to December 2021 were also "high." *Id*. His recent need areas, conducted in January 2022, were the following: (1) anger/hostility; (2) cognitions; (3) work; (4) financial/poverty; (5) recreation/leisure/fitness; (6) substance abuse; and (7) trauma. *Id*. Petitioner is earning FSA time credits for UNICOR work and two programs where he is on a waitlist: Anger Management and Criminal Thinking. *Id*. at ¶ 4. The BOP has not calculated time credits for Petitioner because BOP is prioritizing inmates with closer release dates. Additionally, Petitioner cannot benefit from the time credits as he has maintained "high" under PATTERN analysis. Additionally, any credits he would have received for participation since December 21, 2018, the credits would not equal over $6,000 days left on his release.

In short, Petitioner, who has scored "high" on recidivism risk assessments would have his time credits "applied toward time in prerelease custody or supervised release" if he achieves the necessary recidivism risk metrics and earns time credits equal to the time left on his release. *See* 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1).

The calculation of a prisoner's sentence, including the application of potential sentence credits, can be challenged in a § 2241 petition. *Setser v. United States*, 566 U.S. 231, 244 (2012); *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019) (noting inmate may challenge the computation of his sentence by a § 2241 petition after first seeking relief through the BOP's administrative procedures). Therefore, Petitioner properly brings arguments related to sentence credits in a § 2241 petition. The Court will evaluate each of Petitioner's arguments.

**b. Petitioner's Arguments Regarding Calculation of Time Credits**

Petitioner argues that the BOP's *proposed* rules and regulations suggesting hours are unfair. (Doc. 1). The final rules removed the eight-hour definition and allows inmates to earn time credits for successful participation in a programming need for any part of a day, beginning December 21, 2018. The Court finds that Petitioner's arguments regarding the BOP's proposed rules and regulations that suggested hours instead of days are moot.

**c. Petitioner's Arguments Regarding Disqualifying Offense**

Petitioner next argues that the language "or has a disqualifying prior conviction" in the proposed rules and regulations, which states "an inmate cannot earn FSA Time Credits if that inmate is serving a sentence for a disqualifying offense or has a disqualifying prior conviction," is an improper attempt to disqualify more inmates from earing time credits.

Respondent argues that Petitioner does not have standing because he specifically is not disqualified from the time credits. The Court agrees. To establish standing under Article III, the party must establish he suffered an actual injury, traceable to the conduct of the adverse part, that is redressable by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, because Petitioner is eligible to earn FSA time credit, Petitioner lacks standing as he has suffered no injury related to the language of "disqualifying prior conviction."

**d. Petitioner's Argument Regarding use of Criminal History in PSR for PATTERN score**

Petitioner argues that the PATTERN tool use of criminal history score in the PSR, a static number, prevents inmates from showing a lower recidivism risk score to be eligible for earned FSA time credits. (Doc. 1 at 14). Here, the FSA called for the DOJ to categorize inmates as a minimum low, medium, or high risk but did not prescribe the methodology. The DOJ opened a

comment period, two listening sessions, and met with an independent review to create the PATTERN tool. Of the factors it uses, the inmate's sex offender status, instant violent offense, and criminal history score are all static – the rest of the factors are dynamic and changeable.

Courts generally defer to interpretation of a statute adopted by an agency that Congress has "charged with [the] responsibility for administering the provision." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 865 (1984) (finding if statute is silent or ambiguous agency's interpretation will be upheld if "based on a permissible construction of the statute"). Even if *Chevron* deference does not apply, the Supreme Court has recognized the courts give agency interpretations considerable and decisive weight. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). In applying *Skidmore* deference to an agency's interpretation, courts consider "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id*.

Even utilizing the lesser deferential of the interpretations under *Skidmore*, the Court finds that the DOJ's interpretation and promulgation of the factors in the PATTERN score must not be disrupted. The Court will defer to the DOJ's PATTERN methodology. First, nothing in the FSA *precludes* the use of static factors. Additionally, as the Respondent notes, a criminal history score reflects whether a defendant has already recidivated. (Doc. 14 at 13). If Petitioner remains incident-free, continues to participate in programming, an application of the rest of the dynamic factors will allow him to achieve a lower recidivism risk PATTERN score prior to his release date on December 5, 2038. The Court finds this position tenable considering the consistent reevaluation of PATTERN scores by the BOP. The Court finds the DOJ's approach reasoned, especially in light of the fact DOJ opened comment period, held two listening sessions, and met

with an independent review committee to discuss proposed changes when PATTERN tool came about in July 2019.

The Court denies Petitioner's argument and refuses to find that the PATTERN score is resulting in Petitioner's illegal custody. *Lopez v. Rios*, 553 F. App'x 610, 611 (7th Cir. 2014) ("[s]ection 2241 allows a prisoner to seek release if his continued custody violates the Constitution or federal laws.").

### e. Petitioner's Argument Regarding Calculation of Time Credit Calculation and Application

Petitioner argues he should receive FSA time credits for his work with UNICOR. However, the DOJ states BOP is addressing this issue, but is prioritizing inmates who are releasing sooner. Given Petitioner is not set to release until 2038, his calculation will come later. *See* Doc. 14, Ex. 1 at ¶ 4. The Court finds that Petitioner's argument is premature.

Additionally, Petitioner has some progress to before earning time credits equal to the remainder of his prison term (more than 6,000 days). Therefore, because Petitioner has a "high" recidivism, before his credits are applied to his sentence, he must achieve a lower recidivism risk criteria before application. The Court believes Petitioner should continue to engage in meaningful programming.

### III.   Conclusion

For the reasons above, the Court hereby **DENIES** Petitioner's petition (Doc. 1).

**IT IS SO ORDERED.**
**Dated: September 19, 2022**

/s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**